UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KEITH WILLIAMS,<br><br>　　　　　　　　　Petitioner,<br><br>　v.<br><br>C.M. HARRISON, Warden,<br><br>　　　　　　　　　Respondent. | Civil No.  05cv2150 J (CAB)<br><br>**REPORT AND RECOMMENDATION REGARDING PETITION FOR WRIT OF HABEAS CORPUS**<br>**[Doc. No. 1.]** |

## I.  INTRODUCTION

Keith Williams, a state prisoner proceeding *pro se*, has filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254, challenging his San Diego Superior Court conviction in case number 148887, for first degree murder with special circumstances.  Petitioner argues (1) the trial court, although orally instructing the jury on duress, failed to provide the jury with a written copy of the duress instruction, which violated his right to due process; and (2) the prosecution impermissibly excluded prospective jurors on the basis of race, in violation of his right to equal protection. (Petition at 1, 5.)

The Court has considered the Petition, Respondent's Answer, Petitioner's Traverse, and all the supporting documents submitted by the parties.  Based upon the documents and the evidence presented in this case, and for the reasons set forth below, this Court recommends the Petition be **DENIED**.

## II.  FACTUAL BACKGROUND

This Court gives deference to state court findings of fact and presumes them to be correct; Petitioner may rebut the presumption of correctness, but only by clear and convincing evidence.  28

U.S.C. § 2254(e)(1); *see also Parke v. Raley*, 506 U.S. 20, 35-36 (1992) (holding findings of historical fact, including inferences properly drawn from such facts, are entitled to statutory presumption of correctness). The facts as found by the state appellate court are as follows:

> On the afternoon of Friday May 8, 1998, police found Abdinur Dahir, a cab driver, dead off the shoulder of eastbound Highway 94 near the Federal Boulevard off ramp. Dahir's body bore evidence of strangulation or trauma to the neck and a close range gunshot wound to his chest. The gunshot wound was the primary cause of death.
>
> At about noon on May 8, 1998, an eastbound driver on Highway 94 saw a taxicab in front of him swerving back and forth across two to three lanes of traffic. It appeared that a person in the back seat was fighting with the driver. The cab pulled over to the shoulder of the road where Dahir's body was recovered.
>
> Another driver noted the taxicab parked on the side of the freeway, while a Hispanic or Black male was getting out of the passenger side and struggling with what looked like a heavy package. That driver saw a lighter colored person in the cab's driver's seat. A third driver saw the taxicab start to leave the shoulder leaving a pile of what appeared to be rags. He saw that the driver of the cab looked like Williams.
>
> The cab company recovered Dahir's abandoned cab later that afternoon and found it parked with the engine running in an alley a couple of blocks away from the home of Allen Trice, a friend of Williams. At the time of the murder, Williams was living with Trice. Dahir's cab was normally clean and orderly inside; however, when the cab was found, it was in disarray with the key broken in the ignition and broken dashboard knobs on the floor. Other items recovered in the cab included an unused bullet on the back floor, a pair of sunglasses on the back seat, and an envelope on the front seat. Williams's fingerprint was lifted off the envelope and Trice's fingerprint was recovered from the armrest of the back door.
>
> *Defense Theory*
>
> According to Williams, he and Trice were walking through an apartment parking lot where Dahir was next to his parked cab. Trice walked up to Dahir and started to choke him. Trice then pulled out a gun and ordered Dahir and Williams into the cab. Williams got in the back seat, Dahir took the front passenger seat and Trice took the driver's seat. While Trice was driving the cab, he hit Dahir in the face or neck with the gun. Williams told Trice to stop but then heard a gunshot. Williams then tried to hit Trice who then pointed the gun at Williams and said, "Do you want some of that too?"
>
> After being shot, Dahir kicked and Trice hit him again. Trice swerved over to the side of the freeway, opened the passenger door and Dahir fell out of the car. Trice then got out and pulled Dahir's body away from the road. Trice pointed the gun at Williams and told him to get into the driver's seat to drive. Williams, who was scared and in shock, complied with all of Trice's orders. They finally stopped in an alley a block from Trice's house. Trice told Williams that if he talked to the police he would be "dealt with."

(Lodgment No. 7 at 3-4.)

///

///

### III. PROCEDURAL HISTORY

On October 7, 2002, in an amended complaint, Petitioner was charged with one count of murder in violation of California Penal Code section 187, one count of carjacking in violation of California Penal Code section 215(a), and one count of robbery in violation of California Penal Code section 211. (Clerk's Transcript at 212-213.) The complaint also alleged that in the attempted commission of the robbery and the attempted commission of the murder, Petitioner personally used a firearm within the meaning of California Penal Code section 12022.5(a)(1). (CT at 212-213.) The following special circumstances within the meaning of California Penal Code section 190.2(a)(17) were also alleged: (1) the murder was committed during the commission and attempted commission of a robbery, in violation of California Penal Code section 211 or section 212.5; (2) the murder was committed during the commission and attempted commission of a kidnaping, in violation of California Penal Code section 207 or 209; and (3) the murder was committed during the commission and attempted commission of a carjacking, as defined in California Penal Code section 215. (CT at 213.) Petitioner pled not guilty to the allegations. (CT at 179.)

On October 23, 2002, Petitioner was found guilty of murder in the first degree, carjacking, kidnapping, and robbery. (CT at 150-155.) The jury further found the murder was committed during the attempted commission and commission of the carjacking, kidnaping, and robbery. (*Id*.) The jury did not reach a verdict on the allegation of personal use of a firearm, which was later dismissed from the case. (CT at 150-55.) On December 12, 2002, for his conviction of first degree murder with special circumstances, Petitioner was given an indeterminate term of life in prison without the possibility of parole. (CT at 166.) The sentences for robbery and carjacking were stayed. (CT at 166-167; 217.) Petitioner was also ordered to pay a restitutionary fine. (CT at 167.)

Petitioner appealed his judgment to the California Court of Appeal, Fourth Appellate District, Division One, claiming: (1) the failure of the trial court to provide a written instruction on duress, after orally instructing the jury on duress, deprived him of his due process rights; (2) prospective jurors were impermissibly excluded from the jury by the prosecutor based on their race; and (3) the restitution fine must be stricken. (Lodgment Nos. 3, 4). On July 14, 2004, the Court of Appeal struck the restitutionary fine and affirmed the remainder of the judgment. (Lodgment No. 7.)

Petitioner filed a petition for review in the California Supreme Court, claiming his due process rights were violated because: (1) the trial court did not provide a written jury instruction on duress; and (2) the prosecution improperly excluded minority prospective jurors. (Lodgment No. 8.) On September 22, 2004, the California Supreme Court denied the petition for review. (Lodgment No. 9.)

On November 18, 2005, Petitioner filed a Petition for Writ of Habeas Corpus. [Doc. No. 1.] On March 11, 2006, Respondent filed an Answer. [Doc. No. 12.] On May 10, 2007, Petitioner filed his Traverse. [Doc. No. 56.]

## IV. DISCUSSION

Petitioner contends his federal constitutional rights were violated as follows: (1) the trial court erred in failing to provide the jury with a written copy of the duress defense after providing the instruction orally to the jury, in violation of his due process rights; and (2) the trial court erred in finding the peremptory challenges made by the prosecutor to prospective jurors were permissible, thereby violating his right to equal protection under the Fourteenth Amendment.

With regard to the jury instruction claim, Respondent argues the claim should be denied because Petitioner fails to present a federal question, and even assuming a federal question is presented, the claim was reasonably rejected by the state appellate court within the meaning of 28 U.S.C. § 2254(d). With regard to Petitioner's claim of impermissible peremptory challenges, Respondent argues the claim should be denied because it was reasonably rejected by the state appellate court within the meaning of 28 U.S.C. § 2254(d).

**A.    Standard of Review**

Title 28, United States Code, § 2254(a), sets forth the following scope of review for federal habeas corpus claims:

> The Supreme Court, a Justice thereof, a circuit judge, or a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.

28 U.S.C. § 2254(a) (emphasis added).

The current Petition is governed by the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"). *See Lindh v. Murphy*, 521 U.S. 320 (1997). As amended, 28 U.S.C. § 2254(d) reads:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)-(2) (emphasis added).

To obtain federal habeas relief, Petitioner must satisfy either § 2254(d)(1) or § 2254(d)(2). *See Williams v. Taylor*, 529 U.S. 362, 403 (2000). The Supreme Court interprets § 2254(d)(1) as follows:

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

*Williams*, 529 U.S. at 412-13; *see also Lockyer v. Andrade*, 538 U.S. 63, 73-74 (2003).

Where there is no reasoned decision from the state's highest court, the Court "looks through" to the underlying appellate court decision. *Ylst v. Nunnemaker*, 501 U.S. 797, 801-06 (1991). If the dispositive state court order does not "furnish a basis for its reasoning," federal habeas courts must conduct an independent review of the record to determine whether the state court's decision is contrary to, or an unreasonable application of, clearly established Supreme Court law. *See Delgado v. Lewis*, 223 F.3d 976, 982 (9th Cir. 2000) (overruled on other grounds by *Lockyer*, 538 U.S. at 75-76); accord *Himes v. Thompson*, 336 F.3d 848, 853 (9th Cir. 2003). However, a state court need not cite Supreme Court precedent when resolving a habeas corpus claim. *Early v. Packer*, 537 U.S. 3, 8 (2002). "[S]o long as neither the reasoning nor the result of the state-court decision contradicts [Supreme Court precedent]," *id.*, the state court decision will not be "contrary to" clearly established federal law. *Id*.

**B.     Claim One**

Petitioner claims the trial court deprived him of his right to due process when it failed to provide the jury with a written copy of CALJIC No. 4.40, the instruction on duress. Specifically, he argues the failure to provide the jury with a written copy of the duress instruction prevented the jury from being instructed as to his theory of the case. (Petition at 1-4). As a preliminary matter, the Court notes there is

no constitutional right to a written copy of jury instructions prior to or during deliberations. Therefore it is unclear whether Petitioner states a cognizable claim under 28 U.S.C. § 2254(d). However, assuming *arguendo* Petitioner states a cognizable claim, Petitioner fails to show he was deprived of his right to have the jury instructed as to his theory of the case.

"The right to have the jury instructed as to the defendant's theory of the case is one of those rights 'so basic to a fair trial' that failure to instruct where there is evidence to support the instruction can never be considered harmless error. Jurors are required to apply the law as it is explained to them in the instructions they are given by the trial judge." *United States v. Escobar de Bright*, 742 F.2d 1196, 1201-02 (9th Cir. 1984). Thus, failure to instruct the jury regarding the defendant's theory of the case effectively precludes the jury from considering the defense. *Id*. at 1201. "If the instructions adequately cover the theory of defense, there is no error." *Untied States v. Zuniga*, 6 F.3d 569, 571-72 (9th Cir. 1993).

Here, at Petitioner's request, the trial court specifically instructed the jury as to the duress defense, using the language of the duress instruction as found in CALJIC No. 4.40. The oral instructions given by the trial court, as they pertain to duress, were as follows:

> A person is not guilty of a crime other than murder . . . when he engages in conduct which would otherwise be criminal when acting under threats and menaces under the following circumstances; [¶] where the threats and menaces are such that they would cause a reasonable person to fear that his life would be in immediate danger if he did not engage in the conduct charged and; [¶]if the person in fact then believed that his life was so endangered. This rule does not apply to threats, menaces and fears of future danger to his life nor does it apply to the crime of murder. At least certainly murder in the--what we've referred to as the traditional definition of murder, the unlawful killing of one human being with express malice aforethought, the intent to kill, with or without premeditation or deliberation, which is the distinguishing factor between the two degrees of murder. This rule does not apply to murder of that traditional definition. [¶]Now, when we consider the alternate theory of murder that we have here, the felony murder theory, the rule applies in this sense; that the threats and menace described here may negate the underlying felony if a person is not guilty of the underlying felony due to duress, he cannot be guilty of a felony murder if he can't be first found guilty of the underlying felony. He can't have killed in the preparation of the crime of which he is not guilty. [¶]So this defense, if you will, of duress or threats and menace does in effect apply to the felony murder theory if you find that there is proof of the underlying felony. Again, threats and menaces must be such that they would cause a reasonable person to fear that his this life would be in immediate danger if he did not engage in the conduct charged, and the person must have actually in fact believed that his life was so endangered."

(Reporter's Transcript at 535-36.)

///

In sum, the oral duress instructions and explanations given by the judge to the jury included: (1) an oral recitation of the duress instructions as found in CALJIC No. 4.40;  (2) an explanation of the application of duress to the underlying felonies in a felony murder theory; (3) an explanation that if the jury found the defendant not guilty because of duress, it could not find him guilty of felony murder; and (4) a repeated recitation from CALJIC No. 4.40, including the statement that "threats and menaces must be such that they would cause a reasonable person to fear that his life would be in immediate danger if he did not engage in the conduct charged, and the person must have actually in fact believed that his life was so endangered." (RT at 535-536.)

As these facts demonstrate, the trial court's instructions adequately covered Petitioner's theory of the case. *See Zuniga*, 6 F.3d at 571-72.  Accordingly, the state appellate court's ruling on this claim was neither contrary to, nor an unreasonable application of, clearly established federal law, and was not based on an unreasonable determination of the facts.  Therefore, this Court recommends Petitioner's claim be **DENIED**.

C.    **Claim Two**

Petitioner claims his rights under the Equal Protection Clause were violated when the prosecutor impermissibly excluded black prospective jurors on the basis of race.  Petitioner argues a comparison of three black excluded jurors with non-black retained jurors demonstrates the prosecutor's peremptory challenges were motivated by race.

During *voir dire*, defense counsel made an objection pursuant to *Batson v. Kentucky*, 476 U.S. 79 (1986), challenging three of the prosecution's peremptory challenges as impermissibly based on race. (RT at 472.)  The trial court allowed the prosecutor to respond to the objection. (RT at 472.)  After evaluating the prosecution's reasons for the challenges, the trial judge found no credible showing that the challenges were based solely on race and denied the defense's *Batson* challenge. (RT at 475.) The state appellate court, after reviewing the record and conducting a comparative analysis of the challenged jurors and the retained jurors, agreed with the trial court that there was no evidence of discriminatory intent. (Lodgment No. 7 at 14.)

///

///

**1. *Batson* Challenge**

A defendant is denied equal protection of the law when he is put on trial before a jury from which members of his race have been purposefully excluded. *Batson*, 476 U.S. at 85. "In evaluating the race neutrality of an attorney's explanation [for the exclusion of a juror], a court must determine whether, assuming the proffered reasons for the peremptory challenges are true, the challenges violate the Equal Protection Clause as a matter of law." *Hernandez v. New York*, 500 U.S. 352, 359 (1991) (plurality opinion). In this context, a neutral explanation means an explanation based on something other than the race of the juror. *Id.* at 360. The key issue is the facial validity of the prosecutor's explanation. *Id.* "Unless a discriminatory intent is inherent in the prosecutor's explanation, the reason offered will be deemed race neutral." *Id.*

Furthermore, the neutral reasons need not rise to the level justifying the use of a challenge for cause. *Batson*, 476 U.S. at 97. The proffered explanation does not have to be "persuasive, or even plausible," so long as there is no inherent discriminatory intent in the prosecutor's explanation. *Purkett v. Elem*, 514 U.S. 765, 767-69 (1995) (finding the prosecutor articulated a nondiscriminatory reason when he struck a juror because he had long, unkempt hair, a mustache, and a beard). Additionally, it is a fundamental principle that "official action will not be held unconstitutional solely because it results in a racially disproportionate impact . . . Proof of racially discriminatory intent or purpose is required to show a violation of the Equal Protection Clause." *Arlington Heights v. Metropolitan Housing Development Corp.*, 429 U.S. 252, 264-65 (1977).

Finally, a trial court's ruling on the issue of discriminatory intent is afforded great deference and must be sustained unless it is clearly erroneous. *Snyder v. Louisiana*, __ U.S. __, 128 S.Ct. 1203, 1207 (2008); *Hernandez*, 500 U.S. at 365. Race-neutral reasons for peremptory challenges often involve a juror's demeanor, and the best evidence of discriminatory intent will often be the demeanor of the attorney who exercises the challenge. *Snyder*, 128 S.Ct. at 1208. These determinations of credibility and demeanor are "peculiarly within a trial judge's province." *Id.* (quotations omitted). "Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." *Anderson v. Bessemer City*, 470 U.S. 564, 574 (1985).

///

Here, the prosecutor provided the following explanations for the three peremptory challenges: (1) Ms. Sanders had served on a hung jury and had a brother and friend who had been arrested; (2) Ms. Bryant had expressed a dissatisfaction with law enforcement; and (3) Ms. Maughn worked for Neighborhood House Association, which provides services to low income and disadvantaged families.[1] (RT at 473-75.) These reasons are race-neutral and do not evidence a discriminatory intent. Thus, the trial court's determination that the peremptory challenges were not impermissibly based on race was not clearly erroneous.

**2. Comparative Analysis**

Petitioner also seeks to show pretextual discriminatory intent through a comparative analysis of three excluded black jurors with other, non-black retained jurors. For purposes of a *Batson* claim, a comparative juror analysis may be appropriate when evaluating whether a prosecutor's challenge is a pretext for discrimination. *See Miller-El v. Cockrell*, 537 U.S. 322, 343 (2003). However, in order for the analysis to provide meaningful insight as to pretextual discrimination, the comparisons require a reflection of the same qualities in both excluded jurors and unchallenged jurors. *See Snyder*, 128 S.Ct. at 1211-12.

In *Snyder*, one of the prosecutor's peremptory challenges was objected to as an impermissible juror exclusion based on race. *Id*. at 1208. The prosecutor's proffered reason was his concern the excluded juror would be more likely to vote guilty for a lesser verdict because he saw jury service as an interference with his student teaching obligation. *Id*. at 1208. The Court found the reason given for the exclusion and the characteristics of retained jurors were so similar that the prosecutor would have had the same concern for some of the retained jurors who expressed concern that jury service would interfere with other obligations. *Id*. at 1211-12. Thus, the Court found the reason to be a pretext for discrimination. *Id*. at 1209-12. Here, however, a comparative analysis is not appropriate because the challenged jurors are readily distinguishable from the retained jurors.

---

[1] This Court notes the prosecutor mistakenly attributed a dissatisfaction with law enforcement as an additional reason for his peremptory challenge to Ms. Maughn, although the record does not reflect such dissatisfaction. (RT at 474.) Ms. Maughn stated she had a brother who had been arrested or prosecuted, but had little knowledge of the situation. (RT at 124.) However, the record shows the trial court specifically credited the explanation that Ms. Maughn worked for Neighborhood House as a reason for the challenge. (RT at 474-75.)

**a. Ms. Sanders**

Petitioner argues Ms. Sanders was impermissibly excluded because other non-black jurors were not excluded who either had served on a hung jury or had friends or relatives who had been arrested. However, the prosecutor excluded Ms. Sanders because she had *both* served on a hung jury *and* had friends or family who were arrested. (RT at 474.) No other prospective juror who had the combination of both qualities remained on the jury.

Furthermore, the prosecutor stated he felt Ms. Sanders had voted not guilty on the hung jury. (RT at 474.) This sort of perception by the prosecutor is likely based on Ms. Sanders demeanor during questioning, a nuance that is impossible to glean from a review of the record. Thus, the deference afforded to the trial judge to determine validity on such an explanation carries particular weight here, because only the trial judge has the benefit of bearing witness to the demeanor of participants in the trial. *See Snyder*, 128 S.Ct. at 1208 (stating a trial court must evaluate "whether the juror's demeanor can credibly be said to have exhibited the basis for the strike attributed to the juror by the prosecutor"). Accordingly, a comparative analysis between Ms. Sanders and the retained jurors provides no meaningful insight into a possible discriminatory intent because Ms. Sanders and the retained jurors are not comparable.

**b. Ms. Bryant**

Petitioner argues Ms. Bryant was excluded based on a dissatisfaction with law enforcement, while Juror No.7, who had received a ticket for a violation of driving under the influence in the past, was not excluded. However, the responses of the two jurors to questioning on their respective experiences with law enforcement were significantly different. Ms. Bryant expressed a dissatisfaction with law enforcement based on her reporting her husband for domestic violence against their family, resulting in overnight jail time, a court case, and mandatory domestic violence classes for her husband. (RT at 428-30.) Ms. Bryant stated she felt the treatment by law enforcement was "just not fair. I feel life is not fair, and it was something to go through with our family." (RT at 430.)

In contrast, Juror No.7 expressed that although he was initially upset at receiving the ticket, he ultimately felt like he "got what [he] deserved" in being charged with a violation for driving under the influence. (RT at 32.) Thus, Ms. Bryant's statements reflect an ongoing feeling of dissatisfaction with

law enforcement, while the statements of Juror No.7 express a feeling of fair treatment. As a result, a comparative analysis between Ms. Bryant and Juror No. 7 provides no meaningful insight into a possible discriminatory intent because Ms. Bryant and Juror No. 7 are not comparable.

### c. Ms. Maughn

Petitioner compares Ms. Maughn with Juror No.14 and Juror No.11. However, there are significant differences between Ms. Maughn and the two retained jurors. Juror No. 14 worked with high school students and was married to a Deputy City Attorney. (RT 353.) Juror No. 11 volunteered at a hospital doing pastoral work for eight hours a month. (RT at 157.)

In contrast, Ms. Maughn worked with young children and their families for Neighborhood House Association, an entity that specifically caters to low income and disadvantaged families. (RT at 159.) Ms. Maughn also had a brother who had been arrested or prosecuted. (RT at 124.) Accordingly, a comparative analysis between Ms. Maughn and Juror No. 11 and Juror No. 14 provides no meaningful insight into a possible discriminatory intent because they are not comparable. *But see Snyder*, 128 S.Ct. at 1211-12 (finding a jury comparison meaningful when between jurors who all expressed concern with jury service interfering with family, work, school, or other obligations).

Based on the above analysis, the trial court's determination that the peremptory challenges were not impermissibly based on race was not clearly erroneous. *See Snyder*, 128 S.CT. at 1207. Accordingly, the state appellate court's ruling on this claim was neither contrary to, nor an unreasonable application of, clearly established federal law, and was not based on an unreasonable determination of the facts. Therefore, this Court recommends Petitioner's claim be **DENIED**.

///
///
///
///
///
///
///
///

## V. CONCLUSION

The Court submits this Report and Recommendation to the United States District Judge assigned to this case, pursuant to the provisions of 28 U.S.C. §636 (b)(1) (1988) and Local Civil Rule HC.2 of the United States District Court for the Southern District of California.  For the reasons outlined above, **IT IS HEREBY RECOMMENDED** the Court issue an Order: (1) approving and adopting this Report and Recommendation, and (2) directing that Judgment be entered **DENYING** the Petition.

**IT IS ORDERED** that no later than **May 19, 2008**, any party to this action may file written objections with the Court and serve a copy on all parties.  The document should be captioned "Objections to Report and Recommendation."

**IT IS FURTHER ORDERED** that any reply to the objections shall be filed with the Court and served on all parties no later than **10 days** after being served with the objections.  The parties are advised that failure to file objections within the specified tome may waive the right to raise those objections on appeal of the Court's order.  *See Turner v. Duncan*, 158 F.3d 449, 433 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153, 1156 (9th Cir. 1991).

**IT IS SO ORDERED**.

Dated:  April 14, 2008

CATHY ANN BENCIVENGO
United States Magistrate Judge