# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KEITH WILLIAMS,<br><br>                    Petitioner,<br><br>    v.<br><br>C.M. HARRISON, Warden,<br><br>                    Respondent. | Civil No. 05CV2150 J (CAB)<br><br>**ORDER:**<br><br>**(1) ADOPTING MAGISTRATE JUDGE BENCIVENGO'S REPORT AND RECOMMENDATION; AND**<br><br>**(2) DENYING PETITIONER'S PETITION FOR WRIT OF HABEAS CORPUS [DOC. NO. 1].** |

Before the Court is Magistrate Judge Cathy Ann Bencivengo's Report and Recommendation ("R&R") recommending the Court deny Petitioner Keith Williams' ("Petitioner") Petition for Writ of Habeas Corpus ("Petition") pursuant to 28 U.S.C. § 2254. Petitioner, a state prisoner proceeding *pro se*, challenges his San Diego Superior Court conviction, Case No. 148887, for first degree murder with special circumstances. Respondent filed his Answer and Petitioner filed a Traverse. Petitioner contends that his constitutional rights

were violated when 1) the trial court failed to provide written instructions on duress and 2) when the prosecution dismissed prospective jurors based on race and gender. (Pet'r's Obj. at 4, 6; Petition at 1, 5.) For the reasons set forth below, the Court **ADOPTS** the R&R and **DENIES** the Petition in its entirety.

*Background*

On October 7, 2002, Petitioner was charged with: 1) one count of murder, a violation of California Penal Code § 187; 2) one count of carjacking, a violation of California Penal Code § 215(a); and 3) one count of robbery, a violation of California Penal Code § 211. (Clerk's Trans. at 212-13.) Special circumstances under California Penal Code § 190.2(a)(17) were also alleged as follows: 1) the murder was committed during the attempt and commission of a robbery in violation of California Penal Code §§ 211 or 212.5; 2) the murder was committed during the attempt and commission of a kidnapping in violation of California Penal Code §§ 207 or 209; and 3) the murder was committed during the attempt and commission of a carjacking in violation of California Penal Code § 215. (Clerk's Trans. at 213.) The complaint further alleged Petitioner personally used a firearm during the attempt to commit robbery and murder in violation of California Penal Code § 12022.5(a)(1). (Clerk's Trans. at 212-13.) Petitioner pleaded not guilty to all allegations. (Clerk's Trans. at 179.)

On October 23, 2002, the jury found Petitioner guilty of first degree murder, kidnapping, robbery, and carjacking. (Clerk's Trans. at 150-55.) Furthermore, the jury found the murder was committed during the attempt and commission of a kidnapping, robbery, and carjacking. *Id.* The jury did not decide on the firearm charge, which was later dismissed. *Id.* On December 12, 2002, Petitioner was sentenced to life in prison without the possibility of parole for his conviction of first degree murder with special circumstances. (Clerk's Trans. at 166.) The court stayed the sentences for robbery and carjacking (Clerk's Trans. at 166-67; 217), but Petitioner was ordered to pay a restitutionary fine. (Clerk's Trans. at 167).

Petitioner appealed to the California Court of Appeal, Fourth Appellate District, Division One. Petitioner claimed: 1) the trial court's failure to provide the jury with written instructions on duress after giving an oral instruction on duress violated his due process rights; 2) the

prosecution impermissibly excluded prospective jurors based on race; and 3) the restitutionary fine should be stricken. (Lodgment Nos. 3, 4.) On July 14, 2004, the Court of Appeal affirmed the judgment, but struck the restitutionary fine. (Lodgment No. 7.)

Petitioner filed a petition for review in the California Supreme Court claiming that his due process rights were violated. On September 22, 2004, the California Supreme Court denied the petition for review. (Lodgment No. 9.)

On November 18, 2005, Petitioner filed a Petition for Writ of Habeas Corpus. [Doc. No. 1.] On March 11, 2006, Respondent filed an Answer. [Doc. No. 12.] On May 10, 2007, Petitioner filed his Traverse. [Doc. No. 56.]

## *Legal Standard*

**I. State Prisoner Habeas Corpus Standard**

A federal court may grant a habeas petition if it shows the applicant is in custody "in violation of the Constitution or other laws or treaties of the United States." 28 U.S.C. § 2254(a). State interpretation of state laws and rules cannot serve as the basis for a federal habeas petition, as no federal or constitutional question would be implicated. *Estelle v. McGuire*, 502 U.S. 62, 68 (1991). Habeas petitions are governed by the provisions of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). *Lindh v. Murphy,* 521 U.S. 320 (1997).

Pursuant to AEDPA, a federal court may grant habeas corpus relief from a state court judgment only if the adjudication was (1) contrary to, or involved an unreasonable application of, clearly established federal law, or (2) was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. 28 U.S.C. § 2254(d); *Early v. Packer*, 537 U.S. 3, 7-8 (2002).

A state court decision is "contrary to clearly established federal law" if it (1) applies a rule that contradicts the governing law set forth in Supreme Court cases, or (2) confronts a set of facts that are materially indistinguishable from a decision of the Supreme Court and nevertheless arrives at the opposite result. *Williams v. Taylor*, 529 U.S. 362, 405 (2000). A state court decision is an unreasonable application of the facts "if the state court identifies the correct

governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id*. at 413.

According to 28 U.S.C. 2254(e)(1), a federal district court should presume the finding of a state court to be correct unless the petitioner can rebut the presumption with clear and convincing evidence.

**II. Reviewing a Magistrate Judge's R&R**

The duties of the district court in connection with a magistrate judge's R&R are set forth in Rule 72(b) of the Federal Rules of Civil Procedure and 28 U.S.C. § 636(b)(1). *See* Fed. R. Civ. P. 72(b); 28 U.S.C. § 636(b)(1) (2005). The district court must "make a *de novo* determination of those portions of the report...to which objection is made," and "may accept, reject, modify, in whole or in part, the finding or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1) (2005); *see also United States v. Raddatz*, 447 U.S. 667, 676 (1980). "When no objections are filed, the district court may assume the correctness of the magistrate judge's findings of fact and decide the motion on the applicable law." *Johnson v. Nelson*, 142 F.Supp.2d 1215, 1217 (S.D. Cal. 2001). "Under such circumstances, the Ninth Circuit has held that 'a failure to file objections only relieves the trial court of its burden to give *de novo* review to factual findings; conclusions of law must still be reviewed *de novo*.'" *Id.* (quoting *Barilla v. Ervin*, 886 F.2d 1514, 1518 (9th Cir. 1989)). In this case, Petitioner filed objections to the R&R. [Doc. No. 61.] Accordingly, the Court will make *de novo* determinations of factual findings as to those portions of the R&R to which objections have been made.

### *Discussion*

Petitioner objects to the R&R on the grounds that: 1) his due process rights were violated when the state court omitted from the jury the written instruction on duress after having given oral instructions; 2) his right to equal protection was violated when the prosecution impermissibly used peremptory challenges to excuse prospective jurors based on race and gender; and 3) the R&R did not address whether the prosecution exhibited gender discrimination during *voir dire*. (Pet'r's Obj. at 3, 6).

**I. Lack of Written Jury Instruction**

In claim one, Petitioner contends his right to due process was violated because a theory vital to his defense was omitted when the trial court did not provide the jury with CALJIC No. 4.40, a written instruction on duress. (Pet'r's Obj. at 3.) Petitioner claims that even if there exists no constitutional right to written instructions, Petitioner's due process rights were violated when the court provided all specifically requested instructions except those vital to his defense. (Pet'r's Obj. at 3-4; Traverse at 9.) Petitioner contends that omitting the instruction 1) impermissibly shifted the burden of proof onto Petitioner and 2) the jury could have concluded that the duress defense no longer applied to his case because only the defense's requested written instructions were excluded, whereas none of the prosecution's requested written instructions were omitted. (Pet'r's Obj. at 3-4; Traverse at 9.)  In his Answer, Respondent argues that Petitioner has failed to state a federal question regarding claim one. [Doc. No. 12 at 11.] Respondent contends that even if Petitioner's claim did present a federal question, the California Court of Appeal reasonably rejected the claim and the decision therefore does not fall under § 2254(d). *Id.*

The defendant has a right to have the jury instructed to his theory of the case. *United States v. Escobar de Bright*, 742 F.2d 1196, 1201 (9th Cir. 1984).  "The right to have the jury instructed as to the defendant's theory of the case is one of those rights 'so basic to a fair trial' that failure to instruct where there is evidence to support the instruction can never be considered harmless error. Jurors are required to apply the law as it is explained to them in the instructions they are given by the trial judge." *Id.* (quoting *Chapman v. California*, 386 U.S. 18, 23 (1967)). The trial court is not required to give a specific instruction requested by the defense as long as the court's instructions adequately cover the defense's theory of the case. *United States v. Zuniga*, 6 F.3d 569, 572 (9th Cir. 1993).  If the court's instructions, as a whole, cover the defense's theory, failure to use the defendant's proposed instruction is not reversible error. *United States v. Mason*, 902 F.2d 1434, 1438 (9th Cir. 1990).

The trial court gave the jury an oral instruction on duress using language from CALJIC No. 4.40. The oral instruction concerning duress was as follows:

> A person is not guilty of a crime other than murder . . . when he engages in conduct which would otherwise be criminal when acting under threats and menaces under the following circumstances; [¶] where the threats and menaces are such that they would cause a reasonable person to fear that his life would be in immediate danger if he did not engage in the conduct charged and; [¶] if the person in fact then believed that his life was so endangered. This rule does not apply to threats, menaces and fears of future danger to his life nor does it apply to the crime of murder. At least certainly murder in the--what we've referred to as the traditional definition of murder, the unlawful killing of one human being with express malice aforethought, the intent to kill, with or without premeditation or deliberation, which is the distinguishing factor between the two degrees of murder. This rule does not apply to murder of that traditional definition. [¶] Now, when we consider the alternate theory of murder that we have here, the felony murder theory, the rule applies in this sense; that the threats and menace described here may negate the underlying felony if a person is not guilty of the underlying felony due to duress, he cannot be guilty of a felony murder if he can't be first found guilty of the underlying felony. He can't have killed in the preparation of the crime of which he is not guilty. [¶] So this defense, if you will, of duress or threats and menace does in effect apply to the felony murder theory if you find that there is proof of the underlying felony. Again, threats and menaces must be such that they would cause a reasonable person to fear that his this [sic] life would be in immediate danger if he did not engage in the conduct charged, and the person must have actually in fact believed that his life was so endangered.
> (Rep. Trans. at 535-36.)

There is no constitutional right to a written copy of jury instructions, so it is unclear whether Petitioner has a claim under 28 U.S.C. § 2254 based on a federal question. However, assuming Petitioner does have a claim, he was not deprived of his right to have the jury instructed on his theory of the case. The oral instructions given to the jury adequately covered the defense's theory of the case. *See Ragsdell v. S. Pac. Transp. Co.*, 688 F.2d 1281, 1282 (9th Cir. 1982). Instructions, when viewed as a whole, are adequate when they outline each element of the case so that the jury understands the issues central to the trial without being misled. *Id.* In this case, the instruction on duress clearly laid out the elements of duress and included language from CALJIC No. 4.40 stating, "threats and menaces must be such that they would cause a reasonable person to fear that his life would be in immediate danger if he did not engage in the conduct charged, and the person must have actually in fact believed that his life was so endangered." (Rep. Trans. at 535-36.) The instruction also explained to the jury how duress is applicable to the underlying felonies in a felony murder case, and further stated that if the defendant was not guilty of the underlying felonies by reason of duress, then

the jury could not find the defendant guilty for felony murder. *Id.* The oral instruction therefore adequately explained the elements and consequences of the duress defense.

Petitioner also argues that the omission of his requested written instructions impermissibly shifted the burden of proof by creating a mandatory presumption. (Pet'r's Obj. at 4.) "A mandatory presumption instructs the jury that it must infer the presumed fact if the State proves certain predicate facts. A permissive inference suggests to the jury a possible conclusion to be drawn if the State proves predicate facts, but does not require the jury to draw that conclusion." *Francis v. Franklin*, 471 U.S. 307, 314 (1985). The court's oral instruction in this case did not require the jury to presume anything as true. The jurors still had the responsibility to determine whether or not duress applied to the underlying felonies.

Petitioner claims that jurors are guided by the written instructions given to them. (Pet'r's Obj. at 2.) Petitioner relies on cases where the given oral instructions were misstated or misread and later corrected with written instructions. *People v. Osband*, 13 Cal.4th 622, 687 (1996); *People v. Crittenden*, 9 Cal.4th 83, 138 (1994). But an omitted instruction is not as likely to be prejudicial as an erroneous statement of the law. *Henderson v. Kibbe*, 431 U.S. 145, 155 (1977). The court's given oral instruction in this case was not incorrect with respect to the legal application of duress. *See United States v. Morlan*, 756 F.2d 1442, 1447 (9th Cir. 1985). Petitioner does not object to the content of the oral instructions that were given, nor does he contend that the written copy of those instructions provided by the clerk deviates from the court's oral instructions. Petitioner's claims rests solely on an omitted instruction. Because the jury instructions adequately covered the defense's theory of the case, the state appellate court's ruling on claim one was not contrary to, or an unreasonable application of, clearly established federal law. Accordingly, the Court **DENIES** Petitioner's claim.

## II. Prosecutorial Discrimination

In claim two, Petitioner contends, pursuant to *Batson v. Kentucky*, 476 U.S. 79 (1986), that his right to equal protection was violated when the trial court erroneously

allowed the prosecution to dismiss prospective jurors based on their race and gender. (Pet'r's' Obj. at 6-7.) Petitioner also claims the R&R did not address his objection to the prosecution's use of gender discrimination as a pretext for racial discrimination. (Pet'r's Obj. at 7; Traverse at 16-17.)

**A. *Batson* Challenge**

*Batson* protects a defendant's equal protection rights by prohibiting parties from purposefully excluding prospective members of the jury based on race. 476 U.S. at 86. However, the defendant does not have a right to have a jury composed, in whole or in part, of people of his own race. *Id.* Thus, the court must determine whether the prosecution harbors discriminatory intent in order for the petitioner to succeed on a *Batson* challenge. *Hernandez v. New York*, 500 U.S. 352, 359 (1991).

*Batson* outlines a three-step process to determine whether the prosecution made peremptory challenges based on race. First, a defendant must make a prima facie case that the prosecution made a peremptory challenge on the basis of race; second, the prosecution must give a race-neutral justification for the strike; and third, the trial court must decide whether the defendant has proven discriminatory intent based on the parties' submissions. *Snyder v. Louisiana*, 128 S.Ct. 1203, 1207-08 (2008). But if the prosecution has offered a race-neutral explanation and the trial court has decided whether intentional discrimination existed, then the defendant's prima facie burden becomes moot. *Hernandez*, 500 U.S. at 359. In this context, a neutral explanation is an explanation with reasoning based on something other than race. *Id.* at 360. As long as the trial court cannot discern any discriminatory intent from the prosecution's explanation, the reasoning will be considered race neutral. *Id.*

Federal review requires great deference to the state court's factual findings. *Id.* at 366. In a habeas case, a petitioner must refute the presumption that the state court's conclusion is correct with clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Miller-El v. Dretke*, 545 U.S. 231, 240 (2005). Factual findings made by the state court may be set aside only if they are unsupported by the record. *Purkett v. Elem*, 514 U.S. 765, 769

(1995). Thus, because a trial court's ruling on discriminatory intent is a factual finding, it is given deference unless it is clearly erroneous. *Snyder*, 128 S.Ct. at 1208; *Anderson v. City of Bessemer City*, 470 U.S. 564, 573 (1985).

Petitioner claims that the prosecution dismissed three African-American women based on race. [Doc. No. 1 at 5.] In response to the *Batson* challenge, the prosecution provided the following explanations for peremptorily challenging Jurors I, II, and III: 1) Juror I served on a hung jury and had a brother and friend who had been arrested; 2) Juror II expressed discontent with law enforcement; and 3) Juror III worked to provide services to low income and disadvantaged families. (R&R at 9). After evaluating the prosecutor's reasons for dismissing each potential juror, the trial court held the prosecution's explanations to be race-neutral and denied the defense's *Batson* claim. (Rep. Trans. at 475.) The California Court of Appeal reviewed the record and affirmed the trial court's decision, finding no evidence of discriminatory intent. (Lodgment No. 7 at 14.) Petitioner has not presented clear and convincing evidence of discriminatory intent to refute the presumption that the trial court's decision is correct. Because the trial court's decision is not clearly erroneous, this Court shall not overturn the state court's ruling on discriminatory intent.

**B. Comparative Analysis**

Petitioner claims that the prosecution's explanations were merely a pretext for discriminatory intent. (Pet'r's Obj. at 6.) He claims that when non-black retained jurors are compared with excluded African-American jurors, racial motivation is apparent. However, the California Court of Appeal stated that the prosecution's explanations concerning Jurors I, II, and III provided "no credible evidence the peremptory challenges were exercised on impermissible racial grounds." (Lodgment No. 7 at 11; Doc. No. 12 at 18.)

A comparative juror analysis is appropriate to evaluate whether or not a prosecutor's explanation for dismissing potential jurors is a pretext for discrimination. *See Miller-El v. Cockrell*, 537 U.S. 322, 343 (2003). However, a comparative analysis is

helpful only if the compared jurors share similar attributes. *See Snyder v. Louisiana*, 128 S.Ct. 1203, 1211-12 (2008) (where the Supreme Court found that the prosecution's explanations were a pretext for racial discrimination through a comparative analysis of jurors with same or similar concerns).

Petitioner claims that the prosecution impermissibly excluded Juror I because she shared similar experiences with non-black jurors who were retained. [Doc. No. 1 at 6.] Many jurors who were included had either served on a hung jury or had friends or family who were arrested. *Id.* However, the prosecution challenged Juror I because she was the only prospective juror who had served on *both* a hung jury *and* had family or friends arrested. (Rep. Trans. at 474.) Unlike Juror I, none of the retained jurors possessed both of these characteristics. Thus, a comparative analysis between Juror I and retained jurors does not show the state court was clearly erroneous.

Petitioner contends that the prosecution's explanation for excluding Juror II is pretextual because she was dismissed due to her dissatisfaction with law enforcement while retained jurors shared the same emotion. [Doc. No. 1 at 7.] Juror II said she felt law enforcement treated her unfairly after calling police to report a domestic violence incident. (Rep. Trans. at 428-30.) But a similarly situated retained juror, who was angry with police for receiving a DUI, felt he got what he deserved. (Rep. Trans. at 32.) The retained juror's statements reflect a feeling of equal treatment while Juror II's comments reflect a deep dissatisfaction with law enforcement. Because Juror II and retained jurors do not share a similar outlook toward law enforcement, a comparative analysis of Juror II and included jurors does not provide clear and convincing evidence that refutes the presumption the state court decision is correct.

Petitioner seeks to compare Juror III with retained jurors who he claims have similar occupations. [Doc. No. 1 at 7.] The prosecutor stated he excluded Juror III from the jury because she worked with pre-school children and their families at Neighborhood House, an organization that works with low-income and disadvantaged families. (Rep. Trans. at 159.) Juror III also had a brother who had been arrested. (Rep. Trans. at 124.)

One retained juror volunteered at a hospital doing pastoral work for eight hours a month, as opposed to Juror III, who worked with disadvantaged families as part of her full-time employment. (Rep. Trans. at 157.) Another juror worked with high school students and was married to a Deputy City Attorney, whereas Juror III worked with younger children. (Rep. Trans. at 353.) Because Juror III and the retained jurors Petitioner offers in comparison do not share similar qualities, a comparative analysis to determine possible discriminatory intent is not helpful.

Furthermore, the prosecution does not need to explain why Juror III's occupation is relevant to her ability to be impartial during the trial. The prosecution's explanation need not be "persuasive, or even plausible," as long as no discriminatory intent is apparent. *Purkett*, 514 U.S. at 767-69. In this case, the prosecution's explanations are race-neutral. (Rep. Trans. at 475.)

A juror comparison between Juror III and particular retained jurors could be meaningful because all express concern for children or the welfare of others. However, the trial court's decision to deny the *Batson* challenge should not be overturned. "Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." *Anderson v. Bessemer City*, 470 U.S. 564, 574 (1985). Unless a trial court's ruling on discriminatory intent is clearly erroneous, the decision must be sustained. *Snyder*, 128 S.Ct. at 1207. Therefore, this Court will not overturn the state court's decision regarding Petitioner's *Batson* claim.

Petitioner has not presented clear and convincing evidence that proves the prosecution possessed discriminatory intent during *voir dire*. Thus, Petitioner presents no evidence to show the trial court's decision is clearly erroneous. Accordingly, the Court **DENIES** Petitioner's petition with respect to claim two.

### C. Gender Discrimination

Petitioner claims that the prosecution also discriminated against potential jurors based on gender. (Pet'r's Obj. at 6.) He asserts that the prosecution's exclusion of sixteen women shows discriminatory intent. *Id.* However, Petitioner did not bring the

gender discrimination claim in his original Petition and therefore this Court need not rule on the issue. [Doc. No. 1.]

## *Conclusion*

For the foregoing reasons, the Court **ADOPTS** Judge Bencivengo's R&R and **DENIES** Petitioner's Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254.

**IT IS SO ORDERED.**

DATED: August 21, 2008

HON. NAPOLEON A. JONES, JR.
United States District Judge

cc: All Parties of Record